Bailey v. Henry.

## C. D. BAILEY, *Clerk,* for the use of the State, *v.* GUSTAVUS A. HENRY.

*(Nashville.*   December Term, 1911.)

1. **INHERITANCE TAXES.**   Statute to be strictly construed against State and in favor of taxpayer.

The statute (Acts 1893, ch. 174), imposing inheritance taxes, must be strictly construed against the State and in favor of the taxpayer.   (*Post, p.* 396.)

Acts cited and construed:   Acts 1895, ch. 174.

Cases cited and approved:   State v. Alston, 94 Tenn., 674; English v. Crenshaw, 120 Tenn., 531; Knox v. Emerson, 123 Tenn., 409; Crenshaw v. Moore, 124 Tenn., 528.

2. **SAME.**   On estates passing under will or statute only where decedent was seized or possessed of the whole estate at his death.

The statute (Acts 1893, ch. 174), imposing an inheritance tax on estates passing, either by will or statute, from any person dying seized and possessed thereof, to the living, imposes a tax only where the person dying is seized or possessed of the whole estate at the time of his death.   (*Post, pp.* 369-398.)

Acts cited and construed:   Acts 1893, ch. 174.

Case cited and approved:   Hoge v. Hollister, 2 Tenn. Chy., 606.

3. **ESTATES.**   Tail, general and special, have been abolished; origin and creation of estates in fee.

Estates tail, general and special, have been abolished by statute in this State; but the estate in fee created by our modern deed has its origin in the ancient feoffment.   (*Post, p.* 399.)

Code cited and construed:   Sec. 3673 (S.); sec. 2813 (M. & V.); sec. 2007 (T. & S. and 1858).

Bailey v. Henry.

4. **SAME.   Title in fee includes all interest and right.**

A "title in fee" is a full and absolute estate, beyond and outside of which there is no other interest or even show of right.   (*Post, p.* 399.)

Case cited and approved:   Earnest v. Land & Lumber Co., 109 Tenn., 435.

5. **STATUTE OF FRAUDS.   "Sale" means alienation, and includes parol gift or donation of land.**

The word "sale" in our statute of frauds (section 3142 of Shannon's Code) means alienation; and an action on a parol contract made by the owner, binding him to give or donate land to another, would fall within the terms of that statute; for it does not in terms denounce as void *ab initio* a contract made in contravention of its terms with respect to alienation of lands. (*Post, pp.* 399, 400.)

Code cited and construed:   Sec. 3142 (S.); sec. 2423 (M. & V.); sec. 1758 (T. & S. and 1858).

6. **SAME.   Parol sale of land is only voidable at election of either party, and may be specifically enforced if statute is not pleaded.**

A parol contract for the sale of land is not absolutely void, but only voidable under the statute of frauds at the election of either party; and such contract may be specifically executed as against either party if he fails or refuses to plead the statute, or to insist or rely upon it.   (*Post, pp.* 400-402.)

Code cited and construed:   Sec. 3142 (S.); sec. 2423 (M. & V.); sec. 1758 (T. & S. and 1858).

Cases cited and approved:   Sneed v. Bradley, 4 Sneed, 304; Hudson v. King, 2 Heisk., 573; Jennings v. Bishop, 3 Shannon's Cases, 138; Brakebill v. Anderson, 87 Tenn., 209; Slatton v. Tennessee Coal, Iron & Railroad Co., 109 Tenn., 425.

Bailey v. Henry.

7. **SAME.    Must be specially pleaded, to be available as a defense.**

The statute of frauds must be specially pleaded, to be available as a defense to an action to enforce a parol contract for the sale of land.  (*Post, p.* 401.)

Code cited and construed:   Sec. 3142 (S.); sec. 2423 (M. & V.); sec. 1758 (T. & S. and 1858).

Cases cited and approved:  Brakefield v. Anderson, 87 Tenn., 209; Citty v. Manufacturing Co., 93 Tenn., 280; Phillips v. Kimmons, 94 Tenn., 567; King v. Coleman, 98 Tenn., 571.

8. **SAME.    Parol sale of land may be avoided by vendor's heirs; but until its repudiation, the vendee in possession holds for himself.**

While a parol sale of land is voidable after the death of the vendor at the election of his heirs, and they may recover possession by appropriate proceedings, subject to all the legal consequences flowing from a disaffirmance and rescission of the parol contract, made by the vendor, yet during the currency of the parol contract, and until it is repudiated, the vendee in possession holds for himself, and not as tenant of the vendor. (*Post, pp.* 402, 405, 406.)

Cases cited and approved:  Vaughn v. Vaughn, 100 Tenn., 285; Slatton v. Tennessee Coal, Iron and Railroad Co., 109 Tenn., 425.

9. **SAME.    Parol donee stands on a parity with a parol vendee.** A parol donee of land stands, in legal contemplation, on a parity with a parol vendee, for the "purchase" of land, as contradistinguished from acquisition by inheritance, wherein the title is vested in a person, not by his own act or agreement, but by the mere operation of law, embraces every other method of coming into the possession of an estate, and includes a gift of land.   (*Post, pp.* 402-404.)

Case cited and approved:   King v. Coleman, 98 Tenn., 566.

Bailey v. Henry.

10. **SAME.** Parol gift and adverse possession may ripen into defensive right, and before that period are not void, but merely voidable.

The donee's entry into possession of land under a parol gift and his continuous adverse possession thereof for the period of seven years will create in him a defensive right to the land, which is good against the donor or his heirs; and while before such adverse possession has ripened into such defensive right, such donee's right is limited and qualified, and subject to be terminated by voluntary abandonment or surrender of the possession and the donor's re-entry into possession, or by suit, yet the parol gift and possession under it are not to be treated as acts void in law, and as if they had not been done, but merely as voidable. (*Post*, *pp*. 404-406.)

Code cited and construed: Sec. 4458 (S.); sec. 3461 (M. & V.); sec. 2765 (T. & S. and 1858).

Acts cited and construed: Acts 1819, ch. 28, sec. 2.

Cases cited and approved: Haynes v. Jones, 2 Head, 373; Keys v. Keys, 11 Heisk., 430, 431; O'Neal v. Breechen, 5 Bax., 605; Jordan v. Maney, 10 Lea, 145, 146; Moore v. Burrow, 89 Tenn., 104; Kittel v. Steger, 121 Tenn., 410.

11. **INHERITANCE TAXES.** Land taken and adversely held under parol gift does not pass under a devise to the donee so as to be subject to inheritance taxes.

Where a testator devised land to his nephew, and thereafter made a parol gift of the land to him, with the right of immediate possession, which was taken by the nephew and held adversely and undisturbedly until the death of the testator a few months later, without making any change in his will, it will be held that the testator was not "seized" or "possessed" of the land at the time of his death, within the meaning of the statute (Acts 1893, ch. 174) imposing a tax upon property passing by will. (*Post*, *pp*. 395, 397, 398, 406, 407.)

Acts cited and construed: Acts 1893, ch. 174.

Cases cited and approved: Kincaid v. Brittain, 5 Sneed, 120; Kenney v. Norton, 10 Heisk., 387; Mette v. Dow, 9 Lea, 97; Williams v. Burg, 9 Lea, 459.

12. **SAME. Pleading and Practice. Suit to recover inheritance taxes upon a devise will not authorize a recovery upon a parol gift to the devisee, when.**

Where the suit in behalf of the State for the recovery of inheritance taxes is, by the pleadings, predicated wholly upon the devise as passing the whole estate in the land, and treating the testator's parol gift of the land to the devisee, and his adverse possession thereunder, as absolutely void, the State cannot recover the taxes upon the parol gift, upon the ground that it falls within the statute as a conveyance made in contemplation of death; for there can be no recovery on a predicate outside of and inconsistent with the scope of the plaintiff's pleadings. (*Post, pp.* 398, 407.)

FROM MONTGOMERY.

Appeal from the Circuit Court of Montgomery County. —W. L. Cook, Judge.

Attorney-General Cates and Jno. T. Cunningham, Jr., for State.

H. N. Leech, for defendant.

Mr. Justice Buchanan delivered the opinion of the Court.

This suit was brought for the use of the State of Tennessee for the purpose of collecting from the defendant

$635.75, claimed on behalf of the State as a collateral inheritance tax on certain land in Montgomery county, Tennessee, to which the State insists that the defendent acquired title under item 4 of the will of Patrick Henry, deceased, which item reads:

"4. I give to my nephew, Gustavus A. Henry, the plantation in Montgomery County, Tenn., which I bought from E. W. Barker and wife, which is known as part of the dower tract of Cloverlands."

The statute on which the suit is based is chapter 174, Acts of 1893, and so far as necessary to be set out is:

"That all estates—real, personal and mixed—of every kind whatsoever, situated within this State, whether the person or persons dying seized theerof be domiciled within or out of this State, passing from any person who may die seized or possessed of such estates, either by will or under the intestate laws of this State, or any part of such estate or estates or interest therein, transferred by deed, grant bargain, gift or sale, made in contemplation of death or intended to take effect in possession or enjoyment after the death of the grantor or bargainor to any person or persons or to bodies corporate or politic, in trust or otherwise, other than to or for the use of the father, mother, husband, wife, children, and lineal descendants born in lawful wedlock of the person dying seized and possessed thereof, shall be, and they are hereby, made subject to a duty or tax," etc.

The defendant was successful, both in the county court and on appeal therefrom in the circuit court, and from the judgment of the latter the plaintiff appealed to

this court, and has made four assignments of error, rais-
ing, however, only one question, which is, was the judg-
ment appealed from erroneous?

The act whereon the suit is based must be strictly con-
strued against the State and in favor of the taxpayer.
*State* v. *Alston,* 94 Tenn., 674, 30 S. W., 750, 28 L. R.
A., 178; *Knox* v. *Emerson,* 123 Tenn., 409, 131 S. W.,
972; *English* v. *Crenshaw,* 120 Tenn., 531, 110 S. W.,
210, 17 L. R. A. (N. S.), 753, 127 Am. St. Rep., 1025;
*Crenshaw et al.* v. *Moore et al.,* 124 Tenn., 528, 137 S. W.,
924, 34 L. R. A. (N. S.), 1161. In the construction of
the statute on which the suit is based, the meaning of the
word "estate" is to be determined. Lord Coke defines the
word thus: "State or estates signifieth such inheritance,
or freehold, term for years, tenancie by statute merchant,
staple eliget, or the like, as any man hath in lands or
tenements." Co. Lit., 345a. "An estate in lands, tene-
ments or hereditaments signifies such an interest as the
tenant has therein." *Hoge* v. *Hollister,* 2 Cooper, Chan-
cery Reports, 606. The words of the statute, "passing
from any person who may die seized or possessed of
such estates," mean that the person dying must be seized
or possessed, at the time of death of the whole estate or
interest on which the statute secks to fix the tax, as it
is the privilege of succession to the whole estate which
passes by the will, or under the law of descent, which
this portion of the statute seeks to tax in the hands of
the successor to the testator or decedent as the case
may be.

So much of the statute as we have thus construed applies to estates which pass from the dead to the living by will, or by the statute of descent. The remaining portion of the statute seeks to tax the whole or any part of an estate or estates transferred by the owner by deed, grant, bargain, gift, or sale, while in life, but made in contemplation of death, or intended to take effect in possession or enjoyment after the death of the grantor or bargainor.

The facts to which the statute as construed must be applied in this case are as follows: Patrick Henry, the testator, was the uncle of the defendant. The testator made his will on October 18, 1905, in which appears the devise of the land to defendant already set out. Upon the occasion of the birth of a daughter to the defendant, the testator named the child after his mother, Marion McClure, and in honor of the birth of the child, and the name which he was permitted to bestow upon her, the testator made a parol gift to the defendant of the same tract of land which he had devised to the defendant by his will. This parol gift was made on February 28, 1908. By the gift defendant was authorized to take immediate possession of the land as his own property. Defendant did take possession of it, made a crop on it during the year 1908, paid the taxes on it for that year, claimed it as his own, and adversely to the donor, all of which facts were known to the donor, and the latter stated to third parties that he had given the land to the defendant, and the donor never disputed the defendant's right to the land between the date of the parol gift and

the date of the donor's death, which occurred on November 23, 1908. He died, leaving his will unchanged, by which will he had devised the land to the defendant.

Just here it must be noted that this suit is predicated wholly upon the devise contained in the will, and not at all upon any disposition of the land made by the donor while in life in favor of the defendant, so that, as we have construed the statute, the plaintiff's case must stand or fall upon its insistence that, notwithstanding the parol gift, the whole estate of which the defendant is now seized and possessed in the land passed to and became vested in him by the fourth clause of the will of the testator.

The vital question being thus sharply drawn, the *quantum* of estate in the land which was vested in the testator at the time of his death would seem to be the controlling question. In the chapter which discusses alienation by deed and the common assurances of title of the kingdom, Mr. Blackstone mentions feoffment, and of it says: "It is the most ancient method of conveyance, the most solemn and public, and therefore the most easily remembered and proved, and it may properly be defined as the gift of any corporeal hereditament to another. He that so gives or enfeoffs is called the feoffor, and the person enfeoffed is denominated the feoffee." By this ancient method the estate in fee in land was first created, and was distinguished from the conveyance by gift (*donatio*) only in that by enfeoffment an estate in fee may be created, but by the conveyance by gift (*donatio*) an estate tail alone could be

created. The operative words of each form of conveyance were the same, "do" or "dedi." Estates tail, general and special, by our statute of 1784 (chapter 22, section 5), now appearing as section 3673, Shannon's Code, were abolished; but the estate in fee created by our modern deed has its origin in the ancient feoffment. Now of this estate Mr. Blackstone says:

"But by the mere words of the deed the feoffment is by no means perfected. There remains a very material ceremony to be performed, called livery of seizin, without which the feoffee has but a mere estate at will. This livery of seizin is no other than the pure feudal investiture, or delivery of corporeal possession of the land or tenement, which was held absolutely necessary to complete the donation. *'Nam feudum sine investitura nullo modo constitui potuit.'* And an estate was then only perfect when, as the author of Fleta expresses it in our law, *'Fit juris et seisinae conjunctio.'* "

And this court has defined a title in fee to be "a full and absolute estate, beyond and outside of which there was no other interest or even shadow of right." *Earnest v. Little River Land & Lumber Co.,* 109 Tenn., 435, 75 S. W., 1122.

The word "sale" in our statute of frauds (section 3142, Shannon's Code) means alienation, and an action on a parol contract made by the owner, binding him to give or donate land to another, would, we think, fall within the terms of that statute. A contrary holding would open a wide door to perjury and fraud, and defeat, as we think, one of the purposes of the statute.

But our statute of frauds does not in terms denounce as void *ab initio* a contract made in contravention of its terms with respect to the alienation of lands.    It only bars any action on such contract, and the statute is operative to defeat such a contract only when interposed by one of the parties, and such contract may be enforced by the consent and upon the application of the parties to it, and so long as it is recognized, affirmed, and adhered to by the parties, it cannot be annulled by voluntary action of the courts, as has been held by this court, where a parol sale of land was involved, in the case of *Brakefield* v. *Anderson,* 87 Tenn., 209, 10 S. W., 360.    Contrary holdings may, of course, be found in those jurisdictions where the statute by its terms makes all contracts void which contravene its provisions.    But in *Brakefield* v. *Anderson,* supra, it was further said:

"The sounder view is that a verbal sale of land is not void *ab initio,* but only voidable at the election of either party, and not enforceable by one against the will of the other, who abandons or repudiates it.

"A parol contract for the sale of land is not absolutely void, for it may be specifically executed as against either party if he fails or refuses to rely upon the statute; and if the parties themselves choose to execute the contract, third parties cannot object." *Jennings* v. *Bishop* (Nashville, Dec., 1883), 3 Shan. Cas., 138.

"The doctrine is now well established that, upon a bill for the specific execution of such a contract, if the contract be fully set forth in the bill, and the defendant admits it in his answer, and submits to waive the statute

of frauds, or, what is deemed equivalent to a waiver, does not insist upon the statute as a defense, a specific performance of the contract will be decreed." *Sneed* v. *Bradley,* 4 *Sneed,* 304; *Hudson* v. *King,* 2 Heisk., 573.

"As we have seen, Judge Cooper puts the same doctrine more briefly in these words: . . . 'It (the parol contract) may be specifically executed as against either party if he fails or refuses to rely upon the statute.' *Jennings* v. *Bishop,* supra.

"Both parties come with appropriate pleading and say they want their contract carried out. When this is done, the reason of the statute—the prevention of fraud and perjury—ceases, and the chancellor, instead of setting the contract aside, should decree its specific execution; the case being one in other respects (as this one is) justifying specific performance by a court of equity."

Since the decision in *Brakefield* v. *Anderson,* supra, the doctrine there announced that parol contracts for sale of land were not void but merely voidable, under our statute of frauds, has been repeatedly reaffirmed by this court, and in one of these cases it has also been held, in respect of parol sales, that the statute of frauds must be specially pleaded whenever it is desired to rely upon it as a defense. *Citty* v. *Manufacturing Co.,* 93 Tenn., 280, 24 S. W., 121, 42 Am. St. Rep., 919. And that the administratrix of a vendee in a parol sale cannot disaffirm and rescind the sale when the vendor and the heirs of the vendor do not desire rescission, but prefer to consummate and complete it. *Phillips* v. *Kimmons,* 94 Tenn., 567, 29 S. W., 965.

125 Tenn.—26

In another of these cases the court said: "True it is that a parol sale of land is voidable only, and not void, and that independent third parties cannot intervene to prevent its completion and enforcement, when the vendee is in possession, and both he and the vendor are ready, able and willing to comply with its terms." *King* v. *Coleman,* 98 Tenn., 571, 40 S. W., 1082.

But it has also been held that a parol sale is voidable after the death of the vendor at the election of his heirs, and they may recover possession by appropriate proceedings, with, however, all the legal consequences flowing from a disaffirmance and rescission of the parol contract made by the vendor. *Vaughn* v. *Vaughn,* 100 Tenn., 285, 45 S. W., 677. In another case, after reaffirming the doctrine of *Brakefield* v. *Anderson,* that there may be a specific performance enforced against either party to a parol contract if he fails or refuses to rely on the statute of frauds, this court held: "Moreover, under the uniform holding of this court, during the currency of the parol contract, and until it is repudiated, the vendee in possession holds for himself, and not as tenant of the vendor." And after a citation of the authorities sustaining the above quotation, the court said: "In some of our cases the vendee has been likened to a quasi tenant of the vendor, but in those cases the parol sale had been repudiated." *Slatton* v. *Tennessee Coal, Iron & R. R. Co.,* 109 Tenn., 425, 75 S. W., 928.

Plaintiff insists that a parol donee of land does not, in legal contemplation, stand upon a parity with a parol vendee, and that the decisions we have noticed have no

application to this case, because, as he says, the cases referred to were based upon equitable considerations. We cannot assent to this proposition.   We think the cases referred to are based wholly upon the legal rights of the parties as this case is.   At common law the word "purchase" in its largest and most extensive sense is defined by Littleton to be the possession of lands and tenements which a man hath as by his own act or agreement, and not by descent by any of his ancestors or kindred.   In this sense it is contradistinguished from acquisition by right of blood, and includes every other method of coming to an estate but merely that of inheritance, wherein the title is vested in a person, not by his own act or agreement, but by the single operation of law.   And says Mr. Blackstone: "Purchase, indeed, in its vulgar and confined acceptation, is applied only to such acquisitions of land as are to be obtained by way of bargain and sale for money, or some other valuable consideration; but this falls far short of the legal idea of purchase, for if I give land freely to another, he is in the eyes of the law a purchaser, and falls within Littleton's definition, for he comes to the estate by his own agreement; that is, he consents to the gift."

An extensive array of authorities, collated in the seventh volume, p. 5853, of Words and Phrases, under the heading "Purchase," shows that the common-law definition of "purchase," as applied to land, has obtained general sanction in the courts of this country. And this court has said that, "as between grantor and grantee, the title passes as contemplated by terms of the

deed, whether the conveyance be with or without consideration, and whether it be made in good faith or for a fraudulent purpose. The title is not revested in the grantor by the mere nonclaim of the grantee, and the nonexchange of possession." *King* v. *Coleman,* 98 Tenn., 566, 40 S. W., 1083.

The act of the donor in making the parol gift, and the act of the donee in the acceptance thereof, and his entry into possession of the land thereunder, and his claim of right and title to the land adverse to the donor and his heirs, is not in contravention of the terms of the statute of frauds, or any other law, nor a breach of public policy or good morals. The only effect of the statute of frauds on such a transaction is to bar the maintenance of a suit or action based on such parol donation. When the statute has done this it has performed its full function and purpose. By lapse of seven years' time, and possession by the donee, continuous and adverse to the donor and his heirs, a defensive right to the land may pass from the donor to the donee, under and by virtue of the second section of our act of 1819 (chapter 28), now carried as section 4458 of Shannon's Code. Between the date of the donee's entry under the parol gift, and the time when, under the above statute, his adverse possession has ripened into a defensive right to the land, his right is a limited and qualified one, subject to be disaffirmed and destroyed, either by his voluntary abandonment and surrender of the possession, and a re-entry into possession by the donor or his heirs, or by proper proceeding at law or equity effectually prosecuted for

the purpose of terminating his rights and possession under the parol gift. Now, to say that the act of the donor in speaking the words of gift, which authorize the act of entry into possession by the donee, and that the act of the donee in entering under the parol gift, are acts void in law, and to be treated as if they had not been done, is going beyond any requirement of the statute of frauds, and beyond the legal effect of its provisions.

It is well settled that these acts of the donor and donee, *viz.*, the parol gift and the consequent entry and continuance of adverse possession by the donce, do by the lapse of seven years ripen into a defensive right to the land in the donee, which is good against the donor or his heirs. *O'Neal* v. *Breechen,* 5 Baxt., 605; *Haynes* v. *Jones,* 2 Head, 373; *Keys* v. *Keys,* 11 Heisk., 430-431; *Jordan and Ransom* v. *Maney,* 10 Lea, 145, 146; *Moore* v. *Burrow,* 89 Tenn., 104, 17 S. W., 1035; *Kittel* v. *Steger,* 121 Tenn., 410, 117 S. W., 500, and other authorities there cited.

The only one of our cases in which we have noticed a direct holding that a parol sale is void is *O'Neal* v. *Breechen,* supra. The result, however, reached in that case, was inconsistent with the holding that the sale was void; for it was also held in that case that parol declarations of the donor, tending to show a rescission of the gift, were incompetent, on the ground that at the time of the making of the declaration the donor was not the owner of the thing given (the land), and that he could not by parol declaration relieve the donee of a

charge for advancement. And it was held, further, that
to so much of the land as the parol donee held and oc-
cupied by actual inclosure and claimed adversely in
the lifetime of his father, under the gift, for a period of
seven years, the donee had acquired a possessory right,
and should account for at the estimated value of the
land at the time of the gift. We think the word "void"
was inadvertently used in the opinion, and that "void-
able" was the word which would have expressed the real
meaning of the court and the learned author of the
opinion.

Now and finally under our construction of the statute,
on which this suit is based, the donor and testator,
Patrick Henry, was not seized or possessed of the estate
in the land devised to the defendant at the time of his
death within the meaning of the act. Under our de-
cisions, a covenant of seizin in a deed for land is an as-
surance to the purchaser that the vendor has the very
estate, in quantity and quality, which he purports to
convey. It imports, and seizin in law exacts, a perfect
title, and is not fulfilled by a transfer to the purchaser
of an actual seizin. *Kincaid* v. *Brittain*, 5 Sneed, 120;
*Kenney* v. *Norton*, 10 Heisk., 387; *Mette* v. *Dow*, 9 Lea,
97; *Williams* v. *Burg*, 9 Lea, 459. Prior to his death
the testator had given the land in question to defendant,
had surrendered to defendant possession of it, and had
acknowledged defendant to be the owner of it. After
doing this, had the testator conveyed this land to a per-
son other than the defendant, and embraced in his deed
the usual covenants of seizin, these covenants under our

Bailey v. Henry.

decisions would have been held to be breached by him at
the moment the deed was delivered; for by his acts in
respect of the parol gift it is clear that between him-
self, and such seizin and possession of the land as would
be required of him under such covenant, he had erected
a barrier of adverse possession and claim of right in the
defendant, which, to be sure, he or his heirs could have
destroyed by appropriate legal or equitable proceeding
within the time limited by law, or which would have also
been destroyed by voluntary abandonment of the posses-
sion by the donee and re-entry by the donor, but by noth-
ing short of these things.

Thus disseized and dispossessed of the land, the tes-
tator died, ratifying by his last will all that he had done
while in life by the parol sale. The State cannot on this
record predicate a right to recover on the parol gift by
claim that it falls within the statute as a conveyance
made in contemplation of death, because by its plead-
ings this suit is put entirely on the contrary proposition
that the will passed the whole estate in the land, and
that the parol gift was void, and that it, and everything
done under it, should be held in law as not done.

There can be no recovery on a perdicate outside of and
inconsistent with the scope of the plaintiff's pleadings.
The judgment of the circuit court must be affirmed.