### EDWARDS et al. v. WEIL et al.

(Circuit Court of Appeals, Sixth Circuit. February 12, 1900.)

No. 729.

MORTGAGES—PRIORITIES—JUDGMENT LIENS.
   Plaintiffs, who furnished money to pay off a mortgage on property in Tennessee, paid the money to their agent, who paid it to the mortgagee, receiving a release of the mortgage from the mortgagee, and a new mortgage from the mortgagor to himself, in trust for plaintiffs, which were recorded simultaneously. *Held*, that the release revested title in the mortgagor for a special purpose only, and a decree in favor of defendants against the mortgagor did not attach and become a prior lien on the property, under Shannon's Code Tenn. §§ 4708, 4710, making a decree of a court of record obtained in the county where the debtor resides a lien on the debtor's land for a period of one year.

Appeal from the Circuit Court of the United States for the Southern Division of the Eastern District of Tennessee.

This is a bill to remove a cloud from the title to two fractional lots on Chestnut street, in the city of Chattanooga, Tenn. The lots in question originally belonged to A. J. & G. W. Stoops, who conveyed them by deed of trust to one Filmore Gibson, as trustee, to secure a large indebtedness. Subsequently the same lots were conveyed by mortgage deed of Xenophon Wheeler, in trust to secure an indebtedness of $6,000 for borrowed money to Isaiah and Herman Weil. At the date of this last mortgage approximately $6,000 remained unpaid of the debts secured by the prior conveyance to Gibson, and the object of this second conveyance was to secure money to discharge the balance then due under the Gibson deed, and thus save a foreclosure sale. To accomplish this purpose, the owner of the property applied to the Messrs. Weil for a loan upon the security of the property. The Weils agreed to lend the money on condition that it should be secured by a first lien, and the money used to disincumber the property. To carry out this plan, a mortgage was made and delivered July 12, 1892, to Wheeler, as agent for the Messrs. Weil, and the money was at the same time paid into his hands, to be applied by him in dis-

charging the prior mortgage and securing the title. Wheeler accordingly applied the Weil money to the payment of the mortgage debts, and on July 18, 1892, Gibson made and delivered a quitclaim deed to the mortgagees, acknowledging the payment and satisfaction of all the debts secured under the deed in trust to him. This deed was delivered to Wheeler, to be recorded simultaneously with the mortgage theretofore made to him. Wheeler thereupon caused the said quitclaim deed and the Stoops' mortgage to himself, as trustee, to be simultaneously recorded as of 10 a. m., July 18, 1892. Within one year thereafter the complainants caused an execution upon a money decree of the chancery court for the county of Hamilton, state of Tennessee, against A. J. & W. G. Stoops, to be levied on the lots so conveyed to Wheeler as the property of the judgment debtors, and caused same to be sold at sheriff's sale, and became the purchaser thereof, and they now hold and claim title by virtue of said levy, sale, and a sheriff's deed. Subsequently the mortgage to Wheeler was foreclosed, under the power of sale contained therein, and the property conveyed by the trustee to the complainants, who filed this bill for the purpose of quieting their title and removing the cloud arising out of the aforesaid sheriff's deed. The circuit court, upon the pleadings and evidence, granted the relief prayed, and the defendants have appealed.

George D. Lancaster, for appellants.

Xenophon Wheeler, for appellees.

Before TAFT, LURTON, and DAY, Circuit Judges.

LURTON, Circuit Judge, after stating the facts, delivered the opinion of the court.

In Tennessee judgments and decrees of any court of record, obtained in the county where the debtor resides at the time of rendition, are by statute a lien upon the debtor's land from the time same were rendered, for a period of one year from the rendition of the judgment or decree. Shannon's Code Tenn. §§ 4708, 4710. This statutory lien attaches to after-acquired lands, and continues for a year from the date of their acquisition, and a levy and sale within that period will overreach and avoid all intermediate alienations thereof. Greenway v. Cannon, 3 Humph. 178; Davis v. Benton, 2 Sneed, 665; Bridges v. Cooper, 98 Tenn. 394, 39 S. W. 723. The contention of the appellants is that when Gibson reconveyed the legal title, which had been vested in him as trustee, to the mortgagors, the Messrs. Stoops, the lien of their decree immediately attached, and that the title obtained under the levy and sale made within one year thereafter operated to pass the legal title to them as purchasers at the sheriff's sale. The appellees, who hold the title acquired through foreclosure of the mortgage made to Wheeler by the Messrs. Stoops, contend, on the other hand, that the seisin thus reacquired by the Messrs. Stoops was only for a particular purpose and use, and not for their own benefit, but as a mere instrumentality for passing the title to Wheeler, for the purpose of securing the repayment of the money to the Messrs. Weil, who had advanced the money to pay off the indebtedness secured by the former mortgage. The question as to whether the lien of the Edwards decree attached does not depend so much upon the duration of the estate which vested in the Messrs. Stoops, as a consequence of the Gibson deed of release, as upon the purpose and character of the seisin thus reacquired. If the title was beneficially reacquired, it matters little as to its duration, for the lien of the Edwards decree would

attach, however brief. The fact that the title was reconveyed simultaneously with its acquisition is, however, a most important fact in determining the beneficial or nonbeneficial character of the seisin. The indisputable facts are that the Weils proposed to furnish the money to pay off and discharge the Gibson mortgage upon condition that their money should be secured by a first lien upon the property conveyed to Gibson. To accomplish this, the Weils paid into the hands of Wheeler $6,000, to be applied by him as their agent in paying off the unpaid debts secured by the conveyance to Gibson, and in obtaining from Gibson the legal title vested in him as trustee. This advance was secured by a mortgage dated and acknowledged as of July 12, 1892, and delivered on that date by the mortgagors to Wheeler, with the understanding and agreement that a release was to be obtained from Gibson, and the release and new mortgage simultaneously put to record. July 18, 1892, this release was made by Gibson, and on the same day and at same instant of time both the release and mortgage were duly recorded. The object and purpose of revesting the title in the Messrs. Stoops was to pass it to Wheeler, as trustee, for the Messrs. Weil, whose money had been used in relieving the property from the prior incumbrance. This temporary restitution of the title to the Messrs. Stoops was intended as a mere means of placing the title in Wheeler, where all parties agreed it should be placed for the benefit of the Weils.

The facts bring the case within the rule in Huffaker v. Bowman, 4 Sneed, 89, where the Tennessee supreme court construed the Tennessee statute, under which a lien is claimed to have arisen in behalf of appellants, and determined the character of the seisin necessary to bring into operation the statutory lien upon after-acquired property of a judgment debtor. In that case the facts were that the lands of Bowman had been sold to Kincaid under a mortgage, but were subject to redemption by Bowman or any judgment creditor. Huffaker, desiring to acquire the land free from Bowman's right of redemption, agreed with him to pay off the purchase money due to Kincaid, the purchaser at the trustee sale, and a further sum to Bowman for his equity of redemption. To extinguish Bowman's right of redemption, it was agreed that Kincaid should reconvey the land to Bowman, who should at once convey same to Huffaker. This was done. A judgment creditor levied on the land as the property of Bowman, claiming that the lien of his judgment had attached while the title was in Bowman, his debtor, under the conveyance from Kincaid. It was contended in behalf of the lien of the judgment creditor that the momentary seisin by Bowman of the title was sufficient for the lien of the judgment to attach upon the land as the property of the debtor. McKinney, J., in answering this, said:

"This reasoning is unsound. The transaction was one continuous, entire act. By the agreement and understanding of all the parties preceding the execution of the deeds, no interest was to be vested in Bowman. He was used merely as the medium for passing the title to the complainant; and the two deeds, being executed at the same time, and taking effect at the same instant, constitute but one act, the legal effect of which was to pass the title immediately and without intermission from Kincaid, through Bowman, to the complainant. This is a familiar principle in cases of dower. In treating of the ques-

tion, what will be a sufficient seisin of the husband to render the wife dowable? Blackstone says (book 2, pp. 130–132): 'The seisin of the husband for a transitory instant only, where the same act which gives him the estate conveys it also out of him again,—as where, by a fine, land is granted to a man, and he immediately renders it back by the same fine,—such a seisin will not entitle the wife to dower; for the land was merely in transitu, and never rested in the husband, the grant and render being one continued act. But, if the land abides in him for the interval of but a single moment, it seems that the wife shall be endowed thereof.' See, also, Jackson v. Dunsbagh, 1 Johns. Cas. 95; Stow v. Tifft, 15 Johns. 458; Holbrook v. Finney, 4 Mass. 569, and authorities referred to, where this subject is considered. It is clear, therefore, upon the principle above stated, that the lien of the defendant's decree did not attach upon the land, Bowman having no seisin thereof."

The later case of Bridges v. Cooper, 98 Tenn. 381, 39 S. W. 720, has been urged as in conflict with Huffaker and Bowman. To this we cannot agree. The facts were that a mortgagee released his mortgage to enable the mortgagor to sell and convey the property free from its lien, the mortgagor agreeing to assign to the mortgagee a sufficient number of the purchase-money notes, secured by a vendor's lien, to satisfy his mortgage debt. When this relinquishment was made, the mortgagor's equity of redemption was under the lien of a pending attachment bill. Subsequently the mortgagor sold the land, and assigned the vendees' notes to the mortgagee. The contest arose between the mortgagee, holding such purchase-money notes, and the creditor, who had attached the interest of the mortgagor in the same property before both the relinquishment and sale. The court very properly held that the effect of the relinquishment was to extinguish the mortgage as between the attaching creditor and mortgagee. Huffaker v. Bowman is not cited, and the cases, on their facts, are manifestly distinguishable. We must regard the release and Wheeler mortgage as but one continuous transaction, and as but a means adopted for passing the title to Wheeler, where all parties intended it should rest. It was not intended that the mortgagor should become beneficially seised of the title by the Gibson deed of release. The Stoops were a mere conduit, through whom the title was intended to pass to Wheeler, whose money had relieved the property from the Gibson incumbrance. There was no error in the decree, and it will be affirmed.